# Berman *v.* The Home Insurance Company of New York, Appellant

*Insurance—Fire insurance—Loss—Proof—Opportunity to examine goods—Disposal of damaged goods—Case for jury.*

In an action on a fire insurance policy covering merchandise, the defense was that the defendant was deprived of an opportunity to examine and appraise the goods after the fire. There was evidence that the defendant's agent visited the premises on the morning after the fire ·and examined the remains; that within two weeks defendant's adjuster visited the place but declined to examine the goods; and that two of defendant's representatives examined the goods and arranged with plaintiff to have an inventory taken, which was partly completed when a dispute arose and the inventory discontinued. There also was evidence that more than a month after the fire plaintiff cleared up the premises, destroyed all goods having no value and sold the partially damaged goods at a fire sale, which sale continued several months during which time the goods were seen by and were subject to the examination of defendant's agents. Under such circumstances the case was for the jury and a verdict for the plaintiff will be sustained.

Plaintiff was not obliged to care for the property and hold it subject to defendant's examination indefinitely, but only to give defendant a reasonable opportunity to obtain necessary information as to the extent of the damage.

Krogulski *v.* Northwestern National Insurance Co., 68 Pa. Superior Ct., 47, distinguished.

Argued October 26, 1926.   Appeal No. 2, March T., 1927, by defendant from judgment of C. P. Tioga County, September T., 1924, No. 1, in the case of Max Berman v. The Home Insurance Company of New York, an incorporation. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Assumpsit on a fire insurance policy. Before MARSH, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $1,970.96, and judgment thereon. Defendant appealed.

*Errors assigned,* were to the refusal of points and the refusal of defendant's motion for judgment non obstante veredicto.

*Horace Michener Schell,* and with him *Crighton and Owlett,* for appellant, cited: Claflin v. Commonwealth Ins. Co., 110 U. S. 81; Obrien v. Commercial Fire Ins. Co., 63 N. Y. 108; Harris v. Phoenix Ins. Co., 35 Conn. 310; Oshkosh Match Works v. Manchester Fire Assur. Co., 92 Wis. 510; Astrich v. German-American Ins. Co., 131 Fed. 13; Seibel v. Lebanon Mut. Ins. Co., 197 Pa. 106; German American Insurance Company v. Hocking, 115 Pa. 398; Highlands v. Cumberland Valley Farmers' Mutual Fire Insurance Co., 203 Pa. 134; Krogulski v. Northwestern National Insurance Co., 68 Pa. Superior Ct. 47.

*Chester H. Ashton,* and with him *Andrew B. Dunsmore,* for appellee.

Opinion by Linn, J., March 3, 1927:

Plaintiff had judgment in a suit on two fire insurance policies, of $1,000 each, issued by appellant, one covering household goods and the other (one of twelve such policies [by different insurers)[ covering 'merchandise damaged by fire on the night of February 26, 1924. The only question here is on the merchandise policy. Appellant withdrew its motion for a new trial, and by stipulation approved by the court, confined its motion for judgment n.o.v. to the single question whether plaintiff had forfeited his right to recover on the merchandise policy (1) by disposing of the damaged and undamaged goods at a fire sale lasting from April 3rd to July; and (2) by dumping the debris left after separating the damaged and undamaged goods. As plaintiff has the verdict, we take as established such facts as the jury may have found in his favor from the evidence. Appellant stands on

its requests for binding instructions in its favor and the subsequent motion for judgment n.o.v. No complaint is made of the manner in which the case was submitted to the jury. The court charged that if a verdict for plaintiff was found on both policies, the amounts allowed on each should be separately stated; the verdict on the household policy was for the full amount, with interest; on the merchandise policy the verdict was for $927.96, indicating that the total loss was found to be somewhat less than the total of the policies ($12,000) covering the merchandise and fixtures.

The policy required that the insured give immediate notice of fire, separate the damaged and undamaged property from that totally destroyed, care for it, and furnish an inventory and proof of loss within sixty days. Such proof of loss, with inventory, was delivered to defendant March 22nd.

The nature of the defense requires some statement of the evidence which the jury may have accepted. On the morning after the fire, defendant's agent, Bean, who sold the insurance to plaintiff, visited the premises, examined the remains, and requested plaintiff to separate what remained from what was destroyed, and store it in a barn about thirty feet away from the store. He also saw that plaintiff took necessary steps to care for the remaining property which had been damaged by the fire or water and by freezing. He said, "It [this merchandise] was pretty well taken care of". Another of defendant's witnesses describing it said, "As far as that went, they complied with the conditions of the policy". "Probably within two weeks" after the fire, defendant's adjuster, Clinger, visited the place but declined to examine the property in the barn, though he had ample opportunity to examine that and all the rest of the remains of the fire. Two other witnesses for defendant, McLean and Neill,

visited the premises on March 5th and made an examination of the merchandise and of what else remained and testified that they arranged with plaintiff to have a joint inventory made of what was left. They did not inform plaintiff that they represented the defendant but that they represented a salvage company. On March 11th, Beebe, a witness for defendant, appeared to make a joint inventory, as arranged by McLean and Neill. There is a dispute whether plaintiff was informed that Beebe represented the defendant. The verdict of the jury indicates that he was not so informed. Beebe, with the assistance of plaintiff, his wife, and others, took an inventory on March 11th, but was not permitted to continue on March 12th because of a dispute with plaintiff's attorney as to conditions proposed by Beebe, on which plaintiff should be supplied with a copy of that inventory. This inventory showed merchandise on hand which Beebe had valued at over $2,900 when stopped. One month and three days after the fire, plaintiff's evidence is, he was ordered (by whom does not appear) to clean out everything that was in the store; that he then took out the debris which he considered to have no value and threw it on a lot back of his store from where it was ultimately carted to the river. During all this time it had been seen by, or was subject to the examination of defendant's witnesses named above. The verdict establishes that the stuff dumped into the river had no value. On April 3rd, according to the evidence of plaintiff's wife, he begun a fire sale of the property that had been salvaged. This sale continued until July (without the addition of other goods) and while it was in progress, several representatives of the defendant examined the merchandise in process of sale. No written demand for an appraisal was ever made by defendant as required by the policy, if an appraisal was desired. It is on

those facts that defendant contends that the plaintiff did not afford it reasonable opportunity to examine the goods remaining after the fire, or opportunity to demand appraisal, or (based on the appraisal) to exercise its option to take remaining merchandise, subject of course to the right of the other insurers of the same merchandise.

Defendant presented a request for charge, quoting the clause in the policy which made it the duty of plaintiff to exhibit as often as might be reasonably required the merchandise remaining after the fire, stating as part of the request that the uncontradicted evidence was that no such opportunity had been afforded, and asking for binding instructions for defendant. The court declined to affirm that request and submitted to the jury whether in the circumstances generally outlined above, plaintiff knew that Beebe represented the defendant, instructing the jury that if he knew it and declined to permit Beebe to complete the inventory started on March 11th, plaintiff could not recover if the jury also found that defendant's request that Beebe examine the goods then, was reasonable. The verdict of the jury settled the fact in favor of the plaintiff. By what has been stated, it appears that the evidence was not uncontradicted as defendant stated in the request; it was therefore not error to refuse to affirm, and the qualification is not complained of.

We have, then, a number of witnesses examining the property on the day after the fire and on the other dates named, presumably on behalf of defendant. A proof of loss, with an inventory, was filed in time. So far as appears, plaintiff tried to comply with his policy and to afford defendant ample opportunity to become familiar with the situation in all its aspects. Plaintiff and his wife both testified that at no time was any information asked for which was not furnished;

if they were unable to furnish papers, they explained why, some of their papers having been destroyed in the fire itself. They submitted an annual inventory of goods costing $18,920, on hand February 1, 1924, with original invoices of purchases made 'between that date and the fire, together with their bank deposit book showing the deposits of the proceeds of sales in the course of business, between those dated, together with an inventory made after the fire, and oral evidence concerning the amount of the loss. Their inventory of goods remaining after the fire was $5501.

Plaintiff was not obliged to care for the property and hold it subject to defendant's examination indefinitely. The barn in which some of the property was stored did not belong to the plaintiff. He was required to clean out the debris in the store more than a month after the fire. The court specifically instructed the jury to find whether "this was an honest fire." It is therefore not difficult to understand that the jury concluded that defendant had more than reasonable opportunity to get the information it needed by the various persons who came from time to time apparently for that purpose.

The authorities cited by appellant as applied to this appeal, do not require discussion, though we may refer to the obvious differences in facts in Krogulski's case, 68 Pa. Super. Ct. 47, quoted at length by appellant. That was a fire policy on real property; an appraisal was promptly demanded in writing; within five days after that request was made by the company, the insured destroyed what remained of the building. Of that conduct, we said, "With the demolition of the building, it could no longer have the loss estimated by appraisers and was deprived of its optional right to rebuild or replace the property". But in the case at bar the verdict of the

jury has settled the facts otherwise. Defendant had all the opportunities here of which the insurer was deprived by Krogulski, and which we said in the opinion filed in that case "could not be lost save by some act of omission by the company itself". That omission is a fact determined in this case by the submission to the jury and the verdict for the plaintiff.

There is nothing in the errors assigned that would justify a judgment n.o.v.

Judgment affirmed.